TRINA A. HIGGINS, United States Attorney (7349)
JOEL A. FERRE, Assistant United States Attorney (7517)
Attorneys for the United States
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
(801) 524-5682
joel.ferre@usdoj.gov

---

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| JULIE A. SU, Acting Secretary of Labor, United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> SKYWEST INFLIGHT ASSOCIATION., <br><br> Defendant. | **COMPLAINT** <br><br> Case No. 2:24-cv-956 |

Plaintiff Julie A. Su, Acting Secretary of Labor, alleges as follows:

### NATURE OF THE ACTION

1.      Plaintiff Acting Secretary Julie A. Su files this action under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 481-483, to invalidate the results of an election held by SkyWest InFlight Association (SIA), a local labor organization, from September 17-24, 2024, for failure to comply with federal labor laws and regulations. The Acting Secretary requests the court order new elections supervised by the Department of Labor with new nominations for two seats on SIA's National Board of Representatives.

2.     After receiving a complaint, the Department of Labor (DOL) investigated and found that SIA violated the LMRDA, 29 U.S.C. § 481(e), by disqualifying a member from running in the September 2024 election. The DOL determined that SIA did not provide proper notice of the disqualification for an alleged breach of duty of loyalty and denied the member due process.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 29 U.S.C. § 482(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1345.

4.     This Court may exercise personal jurisdiction over SIA because SIA maintains its principal office in this district.

5.     Venue is proper in this district pursuant to 29 U.S.C. § 482(b); 28 U.S.C. § 1331; 28 U.S.C. § 1345; and 28 U.S.C. § 1391(b).

## PARTIES

6.     Plaintiff Julie A. Su is Acting Secretary of the United States Department of Labor. Acting through its Acting Secretary, the Department of Labor is authorized to bring this action under the LMRDA, 29 U.S.C. § 482(b).

7.     SIA is, and at all times relevant to this action has been, an unincorporated association residing within, and maintaining its principal office in, Salt Lake County, Utah, within the jurisdiction of this district.

## FACTUAL ALLEGATIONS

8.     The frequency and method of electing officers of a labor organization depend on whether the organization is local or national.

9.      And whether a labor organization is local or national depends on its functions and purposes (including how the labor organization is structured), not how it labels itself or even the geographical dispersal of its members.

10.     The DOL classified SIA as a local labor organization based on a review of its functions and purposes, and informed SIA of this decision in a letter dated March 18, 2024. **SIA is a local, not national, labor organization.**

11.     SIA is the only labor organization that represents SkyWest Airlines flight attendants. As such, it is the only authorized representative body SkyWest Airlines recognizes to speak and negotiate on behalf of SkyWest Airlines' flight attendants.

12.     SIA is not and has never affiliated with subordinate or parent labor organizations, and like other local labor organizations, SIA is the organizational body closest to its membership.

13.     SIA interacts with SkyWest Airlines management on behalf of its members on issues that affect the lifestyle, workplace environment, compensation and Flight Attendant policy.

14.     SkyWest Airlines funds SIA's operations and, because of this, SIA's members pay no membership dues.

15.     Additionally, SIA provides several day-to-day services for its members that are typical of local labor organizations, including:

   a.  Holding board meetings where official business is conducted and allowing its members to attend;

   b.  Disciplining its members and officers;

   c.  Negotiating collective bargaining agreements with SkyWest;

d.  Negotiating the policies and procedures of SkyWest's InFlight Operations Department;

e.  Entering into agreements with SkyWest that govern the terms and conditions of employment of its members;

f.  Negotiating employee grievance, corrective action, and termination policies with SkyWest and representing its members in adverse employment actions against SkyWest;

g.  Permitting its members to submit official grievances against SkyWest through SIA's website;

h.  Reviewing the aggrieved members' file and discussing grievance issues with management; and

i.  Negotiating employee grievance policies wherein SIA considers the facts presented by the flight attendant, decides whether the grievance is valid, and discusses the grievance with SkyWest without the employee being present.

**Past Conflicts Between SIA's Officers and Member Amy Hurst**

16.  At all relevant times, Amy Hurst, who filed a complaint with the DOL about SIA's elections, was a member in good standing of SIA.

17.  Around November 4, 2023, Hurst emailed a complaint to SkyWest Airlines human resources division. She complained that SIA's President Brent Coates and other SIA officers sent a communication to SIA members that included her name without her consent. Within this complaint, Hurst stated that SIA officers told her they did not need her consent to include her name in the communication.

18.    Later, sometime in November 2023, Hurst posted to social media that she had signed a union card for a different labor organization because she believed SIA was not a labor organization under federal laws.

19.    In a December 22, 2023, e-mail to SIA's Executive Council, Hurst declared her intent to run for the position of Representative in the January 2024 election.

20.    SIA's Executive Council at the time included President Coates and Vice President Loretta France.

21.    Just days after Hurst sent her e-mail, the Council abruptly disqualified Hurst from running for office. In a December 29, 2023, email, the Council informed Hurst that she was disqualified for breaching a duty of loyalty. The Council stated, without much explanation, that Hurst had acted disloyally by "recently and publicly [speaking] and act[ing] against SIA in regard to its continuing to be the representative of SkyWest's Flight Attendants," and by advocating for a different organization to "ostensibly replace SIA."

22.    In disqualifying Hurst, SIA failed to provide her with specific, written charges, an adequate opportunity to prepare a defense, or a full and fair hearing to contest the allegations, as required by Section 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5).

23.    On January 3, 2024, following her disqualification, Hurst sent an email to the human resources division of SkyWest Airlines, alleging that SIA Vice President France had threatened her with physical violence.

24.    After the January 2024 election, another member also complained to SIA's Executive Council about Hurst's improper disqualification.

25.    Shortly after the election, SIA President Coates rejected Hurst's complaint that

5

she had been improperly disqualified as a candidate in an email on January 16, 2024. Coates

affirmed that Hurst remained disqualified from running as a candidate in the January 2024

election.

**SIA's Bylaws**

26.     SIA's SkyWest Inflight Association Constitution and Bylaws, revised August 12,

2024 (SIA Bylaws) prohibits members from working or advocating to displace SIA as the labor

representative for SkyWest's Flight Attendants:

> A Member is in good standing (as defined in the LMRDA) unless the Member
> expressly (whether verbally or in writing) admits, or is determined by the
> National Board based on an appropriate investigation, to be engaging in, or to
> having engaged in during the twelve-month period preceding and including the
> date of such admission or determination, any of the following forms of
> misconduct:
>
> a) Advocating or working toward the displacement of SIA as the authorized
> national labor representative to speak and negotiate on behalf of SkyWest's Flight
> Attendants.

SIA Bylaws § 9 (August 12, 2024).

27.     The SIA Bylaws also provide that only members in good standing can attend

meetings, vote in officer elections, be candidates for officer positions, hold any officer position,

appeal or contest elections and election results, and receive certain information about SIA. *See*

SIA Bylaws § 9(C)(2) (August 12, 2024).

28.     In a separate provision, the SIA Bylaws also require candidates for officer

positions (including the office of Representative) to "[m]eet the requirements set forth in Section

9 Membership, including maintaining their status as a Member in good standing" and "[f]ulfill

the duty of loyalty to SIA as an institution." SIA Bylaws § 14(D) (August 12, 2024).

29.     The SIA Bylaws outline a process for candidates to challenge a determination of

6

ineligibility to run for office:

1) Any Member notified of their ineligibility to be a candidate for an Executive Leader or Representative position, may, within seven (7) calendar days after the Board's issuance of the notice, appeal their determination to the Board in writing.

2) Appeals must be in writing and shall include any supporting evidence.

3) Any such appeal not received in writing by the Board within seven (7) calendar days of the issuance of the notice of ineligibility shall be null and void and shall not be considered.

4) The Board shall render a decision within a reasonable timeframe following the receipt of an appeal.

5) Within seven (7) calendar days of the Board's decision, and notification to the Candidate, the Member may further appeal in writing for the Board's referral, at its discretion, to the Arbitrator or an Ethics Panel Review (Section 20).

a) The appeal must be received by the Board in writing within seven (7) calendar days of the Board's decision on the initial appeal. If an appeal is not received by the Board within the seven (7) calendar day deadline, it is not valid and cannot be pursued.

b) The Arbitrator or Ethics Panel Review shall render a decision within a generally reasonable timeframe following the receipt of an appeal.

c) Any decision by the Arbitrator or an Ethics Panel Review regarding a timely-filed and otherwise appropriate appeal shall be final and binding.

SIA Bylaws § 19(B) (August 12, 2024).

30.    The SIA Bylaws also outline a process for appeals of candidate disqualifications:

At the Board's discretion, it shall appoint an Arbitrator or refer to the Ethics Committee for a Panel Review of the charge(s) or appeal(s) described herein.

1)  Any determination by the Arbitrator or the Ethics Panel Review shall be final and binding.

2)  In the event the Board chooses to refer the Member's appeal to an Arbitrator and the Member still wishes to pursue the appeal, the Arbitrator may require the Member to pay an initial case management fee and an arbitration services fee in accord with the Arbitrator's policy and as allowed by applicable law.

SIA Bylaws § 20(A) (August 12, 2024).

**SIA's Unlawful September 2024 Election**

31.     Around August 13, 2024, SIA's National Board of Representatives (the Board) announced the opening of candidate nominations for two seats on the Board, each with a four-year term. The election for these positions was scheduled for September 17-24, 2024 (the September 2024 election).

32.     Sometime before the elections, SIA asked whether the DOL would supervise the September 2024 election, knowing that the DOL supervises elections to ensure compliance with the LMRDA.

33.     The DOL did not supervise the September 2024 election because SIA, a local labor organization, was unwilling to set terms of three years or less for the two representative positions as required by 29 U.S.C. § 481(b).

34.     SIA member Amy Hurst nominated herself to run in the September 2024 election because SIA permitted self-nomination of candidates.

35.     Around 20, 2024, SIA Vice President Loretta France emailed Hurst "on behalf of the SIA Board of Representatives" to disqualify Hurst as a candidate in the September 2024 election. The reason Vice President France gave for disqualifying Hurst was breach of a duty of loyalty to SIA. Vice President France cited Section 14 of SIA's Bylaws (Candidate Eligibility Requirements) as the basis for Hurst's disqualification.

36.     As evidence of Hurst's breach of a duty of loyalty, France pointed to Hurst's signing of a union authorization card with another labor organization.

37.     What Vice President France's August 20 email did not do is notify Hurst of any

8

possible negative impacts to her membership status beyond disqualification as a candidate in the September 2024 election.

38.     Hurst timely and properly appealed her disqualification, and around August 23, 2024, Vice President France emailed Hurst to schedule a hearingn.

39.     Just days later, Vice President France offered hearing dates of August 26 and 27. The email, however, did not mention that Hurst could call or cross-examine witnesses, nor did it inform Hurst that any discipline could extend beyond her disqualification from the September 2024 election.

40.     A video conference hearing happened on August 26, 2024.

41.     Hurst, SIA Vice President France, SIA President Coates, and other SIA officers participated in the video conference.

42.     Hurst understood from Vice President France's statements during the video conference that the call was limited to Hurst's eligibility to run for office in the September 2024 election.

43.     Hurst does not recall being informed at the hearing that any consequences could affect her other membership rights, nor that she could call her own witnesses or cross-examine those called by SIA.

44.     To support the Board's claim that Hurst was disloyal to SIA, France presented statements at the hearing about the function of union authorization cards, SIA's status as a labor organization, and whether SIA was represented by counsel at a specific time but did not examine any witnesses.

45.     When Hurst attempted to rebut one of Vice President France's statements of

9

"fact," President Coates interrupted to say that he wasn't there to argue but to hear about Hurst's charge of disloyalty.

46.     While the outcome of the hearing appeared predetermined from the start, on August 27, 2024, Vice President France, on behalf of the SIA Board of Representatives, formally denied Hurst's appeal by e-mail.

47.     Around September 2, 2024, Hurst requested to further appeal her disqualification before either an arbitrator or an ethics panel as outlined by SIA's policies.

48.     By a September 3, 2024, e-mail, SIA contacted a former coworker of SIA's legal counsel, Gregg Formella, to arbitrate Hurst's dispute.

49.     The arbitrator responded to Mr. Formella (but did not copy Hurst) at 1:38 p.m., one day later, and outlined several terms Hurst and SIA would need to accept for the arbitration to proceed. Among those terms were:

   a.  Affirmative waiver by both parties of any conflicts arising from the arbitrator's former working relationship with Mr. Formella;

   b.  Pay $1,000 each; and

   c.  Hold the arbitration the next day, September 5, 2024, with a decision issued by September 6.

50.     At 4:50pm on September 4, 2024, Vice President France emailed Hurst to disclose the $1,000 fee Hurst would have to pay and the process and timeline for submitting evidence to the arbitrator. Vice President France's email did not disclose the arbitrator's potential conflict of interest.

51.     At 7:53pm on September 4, 2024, Vice President France forwarded an email from

10

the arbitrator to Hurst, which for the first time disclosed the potential conflict of interest.

52. At 12:23pm on September 5, Vice President France emailed the arbitrator that Hurst had not responded to the arbitrator's proposal and that "[o]f course, if Ms. Hurst does not meaningfully respond by whatever deadline you may determine appropriate for her to do so, SIA's position would be that Ms. Hurst has abandoned her appeal and lost any right to proceed with it."

53. At 1:42pm on September 5, the arbitrator emailed Vice President France and President Coates (but, again, not Hurst) that submissions must be filed by 6pm for the arbitration happen.

54. At 11:06pm on September 5, Hurst objected to the arbitrator's fee and his conflict of interest: "I do not . . . consent to having an attorney that has worked with SIA's legal counsel. Nor do I agree to the fee's [sic]. I requested a FAIR and UNBIASED appeal." Hurst also wrote: "[i]f SIA wishes me to pay I will request that an individual of my choosing be used."

55. Four days later, on September 9, 2024, President Coates emailed Hurst that SIA considered Hurst to have abandoned her appeal, and that "the determination of your ineligibility to run for office stands[.]"

56. The September 2024 election happened without Hurst's name appearing on the ballot.

57. SIA considers Hurst not to be a member in good standing due to her alleged disloyalty. As a result, she was denied the right to vote in SIA elections, including the September 2024 election.

58. After initially denying Hurst the right to vote, SIA reversed its decision and

allowed all members, regardless of their membership status, to vote in the September 2024 election. *See* SIA Bylaws, § 9(C)(2).

59.    SIA decided to allow all members to vote in the September 2024 election because its bylaws, which introduced new and previously non-existent obligations for members, were enacted shortly before the election.

60.    Hurst filed a complaint with the Acting Secretary on September 24, 2024, protesting her disqualification as a candidate in the September 2024 election and other issues arising under Section 610 of the LMRDA, 29 U.S.C. § 530.

61.    SIA's unfounded and baseless position has been that Hurst is precluded from filing a Title IV LMRDA complaint with the Acting Secretary because SIA's Board found Hurst to be disloyal and stripped her of good-standing membership status.

62.    SIA has agreed to extend the deadline for the Acting Secretary to file suit regarding Hurst's complaint to the DOL until December 23, 2024, but no longer. Since this Complaint was filed on or before December 23, 2024, it is not time-barred.

CAUSE OF ACTION

84.    The Acting Secretary realleges all prior allegations.

85.    The LMRDA, 29 U.S.C. § 481(e), imposes requirements for labor organization elections:

> In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed)[.]

86.    The LMRDA, 29 U.S.C. 411(a)(5) also addresses the discipline of labor

12

organization members:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare a defense; C) afforded a full and fair hearing.

87.    SIA violated the LMRDA, 29 U.S.C. § 481(e), when it disciplined Hurst by disqualifying her from running in the September 2024 election for breaching a duty of loyalty by failing to provide:

    a.  Written specific charges by, among other things, stating that the proceeding against Hurst only related to the candidate eligibility requirements set forth in Section 14 of SIA's Bylaws, and failing to notify Hurst that penalties could exceed disqualification from the September 2024 Election;

    b.  Hurst a reasonable time to prepare a defense; and

    c.  A full and fair hearing by, among other things, not allowing Hurst to call and cross-examine witnesses, allowing Vice President France and President Coates to participate, and conducting the hearing before a biased tribunal that had prejudged the outcome.

### REQUEST FOR RELIEF

WHEREFORE, the Acting Secretary requests that this Court enter an Order and Judgment in her favor and against SIA as follows:

(a)    declaring SIA's September 17-24, 2024, election for two Representatives void and in violation of the LMRDA;

13

(b)     directing SIA to conduct new elections for two Representatives, including new

nominations, under the supervision of DOL;

(c)     for the costs of this action;

(d)     injunctive relief to enjoin violations; and

(e)     for such other relief as may be appropriate.

Dated this 20th day of December, 2024.

TRINA A. HIGGINS
United States Attorney

*/s/ Joel A. Ferre*
JOEL A. FERRE
Assistant United States Attorney

OF COUNSEL:

SEEMA NANDA, Solicitor of Labor
BEVERLY DANKOWITZ, Associate Solicitor
JEFFREY LUPARDO, Counsel for Labor-Management Enforcement
KEVIN KOLL, Senior Attorney, U.S. Department of Labor
TRACY WOLF, Attorney, U.S. Department of Labor

14